IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTY ANNA ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:23-cv-00636 |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

This is an employment discrimination and retaliation case. On December 6, 2023, Christy Anna Allen filed an Amended Complaint, suing Glenn Baletto, Stephanie Chatman, Joseph Day, Richard Rooker,[1] and the Metropolitan Government of Nashville and Davidson County, Tennessee ("Defendants"). (ECF No. 26.) Plaintiff accuses Defendants of retaliating against her for exercising her First Amendment right to exercise political speech, in violation of 42 U.S.C. § 1983 ("Count One"); conspiring to violate her constitutional rights, in violation of 42 U.S.C. § 1985 ("Count Two"); gender discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Count Three"); sexual

---

[1] All defendants are sued in their official capacities.

harassment, also in violation of § 2000e of Title VII ("Count Four"); and age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 ("Count Five"). (Id. at 16-29.)

Before the Court are Defendant Baletto's Motion to Dismiss for Failure to State a Claim and Defendant Chatman's Motion to Dismiss for Failure to State a Claim, filed on December 20, 2023. (ECF Nos. 30-33.)

## I. Background

On December 6, 2023, Plaintiff filed an Amended Complaint alleging the following. (ECF No. 26.) She was hired as a Deputy Clerk for the Davison County Circuit Court in April 1995. (Id. at 5, ¶ 7.) During the relevant time period, Defendant Baletto was the Chief Clerk of the Davidson County Circuit Court, and Defendant Chatman was the Deputy Clerk of the Davidson County Circuit Court. (Id. at 6, ¶¶ 17-18.) Both defendants supervised Plaintiff, and both had the authority to terminate her. (Id.) Defendant Rooker, the Davidson County Circuit Court Clerk, supervised and managed the staff of the Davidson County Circuit Court, including Plaintiff. (Id. at 7, ¶ 23.)

On September 27, 2021, Defendant Rooker announced that he was not seeking reelection for his position as the Circuit Court Clerk for Davison County. (Id. at 6, ¶ 20.) Defendant Rooker announced that he was endorsing Defendant Day as Rooker's replacement and

2

asked the staff to support Defendant Day's candidacy. (Id. at 6-7, ¶¶ 22.) Defendant Rooker "made it clear to his staff that they were expected" to work on Defendant Day's campaign, announcing at one campaign event that employees who did not support Defendant Day would lose their jobs after Day's election. (Id. at 7, ¶¶ 24, 26.) Defendant Baletto was "active" in Defendant Day's campaign and tried to get Plaintiff to campaign as well. (Id. at 7, ¶ 27.) Defendant Chatman repeatedly solicited campaign contributions from Plaintiff and Plaintiff's family, and told Plaintiff that, if Defendant Day were not elected, everyone in the office would lose their jobs. (Id. at 7, 21 ¶¶ 28-29, 135.)

Working on a political campaign was not part of the job description for any employee working in the Davison County Circuit Court's Office. (Id. at 9-10, ¶¶ 43-49.) Employees were not compensated for time spent campaigning for Defendant Day. (Id. at 10, ¶ 44.) Any work on Defendant Day's political campaign was outside the scope of employment. (Id. at 10, ¶ 45.)

Plaintiff attended only a few campaign events and did not make any donations. (Id. at 7-8, ¶¶ 30-31.) She did not endorse any other candidate as Defendant Rooker's replacement. (Id. at 8, ¶ 31.) Defendant Day won the election after running unopposed and began his tenure as Circuit Court Clerk on September 1, 2022. (Id. at 8, ¶ 35.)

3

On August 31, 2022, Plaintiff was terminated without notice and without cause after 27 years at her job. (Id. at 8, ¶ 36.) Three other employees —— all of whom, like Plaintiff, were women over age forty who did not campaign for Defendant Day —— were also terminated. (Id. at 8-9, ¶¶ 35-36.) No one who donated to Defendant Day's campaign was terminated. (Id. at 9, ¶ 37.) Defendants Baletto and Chatman knew which employees had worked on or donated to Defendant Day's campaign, and Defendant Rooker consulted them before deciding whom to terminate. (Id. at ¶¶ 39-42.) Defendant Rooker "recommended and requested" Plaintiff's termination based on Defendant Baletto and Defendant Chatman's input. (Id. at 9-10, ¶¶ 38, 52.) Defendants Day and the Metropolitan Government "ratified and endorsed" these terminations and took no action to stop them or to reinstate the unlawfully terminated employees. (Id. at 10-11, ¶¶ 53-58.) Plaintiff had the right, under the Tennessee and United States Constitutions, not to participate in Defendant Day's campaign, and was terminated in retaliation for exercising that right. (Id. at 11-12, ¶¶ 60-69.)

Plaintiff also brings claims of gender-based discrimination, sexual harassment, and age discrimination against Defendants Metropolitan Government, Rooker, and Day. (Id. at 23-29, ¶¶ 153-203.) Defendants Chatman and Baletto are not party to those

4

claims, and the allegations are not relevant to the instant Motions to Dismiss.

## II. Jurisdiction

### A. Federal Question Jurisdiction

District courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiff brings claims under § 1983, § 1985, Title VII, and the ADEA. (ECF No. 1.) The Court has original jurisdiction over those claims.

### B. Supplemental Jurisdiction and Choice of Law

A district court can exercise supplemental jurisdiction over claims that are so related to the claims forming the basis of original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). As part of Counts One and Two, Plaintiff alleges that Defendants violated her free speech rights under the Tennessee Constitution. (ECF No. 26 at ¶¶ 16-23, 97-152.) Those allegations address the same set of facts —— namely, Defendants' alleged retaliation against Plaintiff for her failure to adequately support Defendant Day's campaign for County Clerk —— as her federal claims. The Court has supplemental jurisdiction over Plaintiff's state constitutional claims.

Because those claims arise under Tennessee law and invoke the Court's supplemental jurisdiction, the Court applies the substantive law of the State of Tennessee to the extent it does

not conflict with federal law. See Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 741 (6th Cir. 1999).

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss for failure to state a claim, a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in her favor. Golf Vill. N., LLC v. City of Powell, 14 F.4th 611, 617 (6th Cir. 2021) (citing Cahoo v. SAS Analytics, Inc., 912 F.3d 887, 897 (6th Cir. 2019)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Ass'n Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

Qualified immunity protects government actors from suit unless plaintiff has plausibly alleged facts showing that

6

defendant "violated a statutory or constitutional right, and . . . the right was clearly established at the time of the challenged conduct." Moderwell v. Cuyahoga Cnty., Ohio, 997 F.3d 653, 659-60 (6th Cir. 2021) (internal quotation marks omitted). A right is clearly established where it has a "clear foundation in then-existing precedent" such that "the statutory or constitutional question [is] beyond debate." Id. at 660 (internal citations, quotation marks omitted). The Supreme Court has cautioned that "courts must not define clearly established law at a high level of generality," and that a "rule is too general if the unlawfulness of the [defendant's] conduct does not follow immediately from the conclusion that the rule was firmly established." Id. (internal citations, quotation marks omitted).

## IV. Analysis

Because Defendants Baletto and Chatman's Motions to Dismiss are materially identical, the Court will address their arguments simultaneously. (ECF Nos. 31, 32.)

### A. Plaintiff Has Adequately Pled Claims for First Amendment Retaliation and Conspiracy to Violate her Constitutional Rights

#### 1. First Amendment Retaliation

Defendants Baletto and Chatman argue that Plaintiff has failed to state a claim for First Amendment retaliation under § 1983, because neither Defendant had the power to terminate Plaintiff, and thus could not have caused her constitutional

7

injury. (ECF Nos. 31 at 1.) Defendants assert that, under Tenn. Code Ann. § 8-20-109, only the elected Circuit Court Clerk — Defendant Rooker and later Defendant Day — had the authority to fire Plaintiff. (ECF Nos. 31 at 4-5.)

To state a claim for First Amendment retaliation, a plaintiff must plausibly allege: "(1) that he was engaged in protected conduct; (2) that the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the protected conduct caused the adverse action, at least in part." Susselman v. Washtenaw Cnty. Sheriff's Office, 109 F.4th 864, 871 (6th Cir. 2024).

Mere "proximity" to wrongdoing does not establish liability. Pineda v. Hamilton Cnty., Ohio, 977 F.3d 483, 490 (6th Cir. 2020) (internal quotation marks omitted). Rather, Plaintiff must plead that each defendant was "personally involved" in the unconstitutional activity. Id. Without such personal involvement, Plaintiff cannot demonstrate that the individual defendant's tortious conduct caused her injury. Id. The caselaw is ambiguous, however, as to the level of personal involvement a defendant must have in an adverse employment decision to have "caused" the injury under § 1983.

A plaintiff can show causation even if defendant "did not himself perform a particular action necessary to that violation." Yerkes v. Ohio State Highway Patrol, No. 22-3030, 2022 WL 17753528,

8

at *5 (6th Cir. Dec. 19, 2022); <u>King v. Zamiara</u>, 680 F.3d 686, 695 (6th Cir. 2012). Section 1983 incorporates the tort principle "that makes a man responsible for the natural consequences of his actions," and a defendant may be liable for a plaintiff's harm where "it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct . . . even if an intervening third party is the immediate trigger for plaintiff's injury." <u>Yerkes</u>, 2022 WL 17753528, at *5.

Courts have granted summary judgment in favor of defendants in First Amendment retaliation suits on the basis that, because the defendant did not have final decision-making power over the plaintiff's employment, the defendant could not have caused any adverse employment action. <u>See, e.g.</u>, <u>Benison v. Ross</u>, 765 F.3d 649, 660-63 (6th Cir. 2014); <u>Smith v. Campbell</u>, 250 F.3d 1032, 1035, 1038 (6th Cir. 2001); <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300-02 (6th Cir. 1999); <u>Marshall v. Decatur Cnty. Gen. Hosp.</u>, 698 F.Supp.2d 1009, 1014, 1017 (W.D. Tenn. 2010). However, the Sixth Circuit has left open the possibility that, in some circumstances, a defendant without final decision-making power could have had sufficient influence over the ultimate decision to warrant the imposition of liability. The Circuit has discussed, for example,

9

whether the "cat's paw" theory of liability that applies to Title VII cases may apply in the § 1983 context.[2]

In DeCrane v. Eckhart, 12 F.4th 586, 604 (6th Cir. 2021), the Sixth Circuit wrote:

> [Defendant] argues that his supposed retaliatory animus could not have caused many of the adverse actions because he was not the official with the final decisionmaking authority for them. Our caselaw makes clear that § 1983 defendants can be held liable only for their own conduct, so a plaintiff must show that a defendant was sufficiently involved in the adverse action. What involvement is required? Does § 1983 permit a so-called "cat's paw" theory of liability for non-decisionmakers?

The Court left the question unanswered because the defendant had waived the argument on appeal. See also Bose v. Bea, 947 F.3d 983, 993 n.4, 994 (6th Cir. 2020) (holding that the cat's paw theory of liability does not exist under Title IX, but noting that the Sixth Circuit has never decided whether it exists under § 1983).

Plaintiff has pled that Defendants Chatman and Baletto supervised her and "had decision making authority in whether or not the Plaintiff would keep her position." (ECF No. 26 at ¶¶ 17-18.) Plaintiff alleges that Defendant Rooker "recommended

---

[2] Under the cat's paw theory, a Title VII plaintiff may "hold [her] employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision" where that supervisor was, in practical terms, "the driving force behind the employment action." Wyatt v. Nissan North America, Inc., 999 F.3d 400, 420 (6th Cir. 2021) (internal citations, quotation marks omitted.)

and requested" Plaintiff's termination but that he based his recommendation on the "input from the immediate supervisors, namely Defendants Baletto and Chatman." (Id. at ¶¶ 39-40.) Sixth Circuit caselaw is ambiguous as to "[w]hat involvement is required to demonstrate causation," requiring some level of personal involvement by each defendant, but not requiring each defendant to be involved in every act necessary to the violation. DeCrane, 12 F.4th at 604. Although Defendants Chatman and Baletto did not have final decision-making authority about whom to terminate, basic tort principles underlying § 1983 dictate that "a man [is] responsible for the natural causes of his actions." Yerkes, 2022 WL 17753528, at *5. Drawing all inferences in Plaintiff's favor, as required at the motion to dismiss stage, Plaintiff has adequately pled that Defendants caused her termination, because Defendants Chatman and Baletto should have reasonably foreseen that Defendant Rooker would terminate Plaintiff based on their recommendation. Golf Vill. N., LLC, 14 F.4th at 617; Yerkes, 2022 WL 17753528, at *5. Defendants' Motion is DENIED on Count One.

### 2. Conspiracy

Defendants Baletto and Chatman argue that Plaintiff has failed to state a conspiracy claim because her allegations are not sufficiently specific and because her claim is barred by the intracorporate conspiracy doctrine. (ECF No. 31 at 7.)

Conspiracy claims "must be pled with some degree of specificity." Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2023.) Because "direct evidence of an express agreement among all the conspirators to conspire" is rare, "circumstantial evidence may provide adequate proof of conspiracy." Id. A plaintiff must plead facts supporting the inference that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." Bickerstaff v. Lucarelli, 830 F.3d 388, 400 (6th Cir. 2016) (internal citations, quotation marks omitted); Kyles v. Cnty. of Oakland, 2:22-CV-12973-TGB-APP, 2024 WL 1259472, at *5 (E.D. Mich. Mar. 25, 2024). One district court has found that:

> "[t]he specificity required by § 1985 requires a plaintiff to allege (1) specific conduct that violated his rights, (2) the time and place of that conduct, and (3) the identity of the responsible parties . . . Furthermore, a plaintiff fails to state a claim under § 1985(3) if he fails to make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish, at least by inference, the requisite 'meeting of the minds' essential to the existence of a conspiracy."

Ashiegbu v. Purviance, 76 F.Supp.2d 824, 830 (S.D. Ohio, 1998) (internal citations omitted).

Another court has found that plaintiffs raising conspiracy claims must plead facts showing "which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of

12

constitutional rights." <u>Uduko v. Cozzens</u>, 975 F.Supp.2d 750, 757 (E.D. Mich. 2013) (internal citations, quotation marks omitted).

Plaintiff has pled such facts here. She alleges that Defendants Rooker, Day, Baletto, and Chatman conspired to deprive Plaintiff of her rights under the First Amendment to the United States Constitution and her rights under the Tennessee Constitution. (ECF No. 26 at ¶ 11.) Plaintiff alleges that the parties conspired by pressuring employees to campaign on behalf of Defendant Day and retaliating against those who refused. (Id. at ¶ 130.) Plaintiff alleges that Defendants pressured employees to campaign by, for example, asking them for campaign contributions and telling employees that those who did not support Defendant Day would lose their jobs after the election. (Id. at ¶¶ 26, 28-29); <u>see also</u> <u>Bickerstaff</u>, 830 F.3d at 400 (requiring plaintiffs to plead "an overt act . . . committed in furtherance of the conspiracy"). Plaintiff alleges that these events occurred between September 27, 2021, when Defendant Rooker announced that he was not seeking reelection, and the August 4, 2022 election, and that she was terminated on August 31, 2022. (ECF No. 26 at ¶ 22.)

Plaintiff's allegation that Defendants Rooker and Day consulted with Defendants Chatman and Baletto about which employees failed to campaign for Defendant Day permits the Court to infer "the requisite 'meeting of the minds' essential to the existence of a conspiracy." <u>Ashiegbu</u>, 76 F.Supp.2d at 830; (ECF No. 26 at

13

¶¶ 39-40, 52.)  Although Plaintiff does "not detail exactly when the plan was formed," her allegations that all Defendants pressured her to campaign for Defendant Day, consulted one another about which employees did not, and terminated those employees support the inference that the parties had agreed on a plan to coerce employees to support Defendant Day's campaign and retaliate against those who did not.  Kyles 2024 WL 1259472 at *5; Uduko, 975 F.Supp.2d at 757 (finding that plaintiff "need not show an express agreement").

The cases Defendants cite to argue that Plaintiff's allegations are insufficiently specific are distinguishable.  In Center for Bio-Ethical Reform, Inc. v. City of Springboro, 877 F.3d 807, 813-18 (6th Cir. 2007), anti-abortion activists sued police, alleging that the activists had been unlawfully detained and arrested based on their political views.  The Sixth Circuit affirmed the district court's conclusion that "there was no evidence that Defendants had somehow entered into an agreement to deprive Plaintiffs of their rights."  Id. at 832.  Unlike the instant case, where Plaintiff alleges that Defendants consulted about terminating employees in retaliation for their failure to campaign for Defendant Day, plaintiffs in Center for Bio-Ethical Reform merely discussed the actions of individual defendants without evidence of any "meeting of the minds."  Id. at 813-18.  Center for Bio-Ethical Reform, moreover, was decided at the summary judgment stage, and plaintiffs have a higher burden to survive summary judgment than

14

to survive a motion to dismiss.  Id. at 818; Kyles, 2024 WL 1259472, at *5.

In Faith Baptist Church, et al. v. Waterford Township, et al., No. 10-1406, 522 Fed. Appx. 322, 323-25 (2013), the Sixth Circuit affirmed the district court's dismissal of plaintiffs' claims that they had been unlawfully targeted with noise complaints based on their religious views.  The court held that the district court correctly granted defendants' motion for judgment on the pleadings, which is decided using the same standard as 12(b)(6) motion, because the plaintiffs "did not allege any facts to support their claim that [d]efendants engaged in a conspiracy."  Id. at 325-36. Plaintiffs alleged various misconduct by police officers and the township's prosecuting attorney, but provided no evidence of an agreement.  Id. at 324-25.  That contrasts with Plaintiff's allegations that Defendants Baletto and Chatman shared information with Defendants Rooker and Day so that Rooker and Day could better target the employees to retaliate against. (ECF No. 26 at ¶¶ 39-40, 52.)  Plaintiff has pled her conspiracy claim with sufficient specificity.

Plaintiff's conspiracy claim is not barred by the intracorporate conspiracy doctrine.  Under the intracorporate conspiracy doctrine, if "all of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy" for the purposes of § 1985(3) liability. Jackson v.

15

<u>City of Cleveland</u>, 925 F.3d 793, 817 (6th Cir. 2019) (internal quotation marks omitted); <u>Johnson v. Hills & Dales Gen. Hosp.</u>, 40 F.3d 837, 839-40 (6th Cir. 1994). "Entities" under the intracorporate conspiracy doctrine include corporations, local governments, and municipalities. <u>Jackson</u>, 925 F.3d at 818. Members of the same entity can form a § 1985(3) conspiracy only when acting outside the scope of their employment. <u>Id.</u>

Plaintiff does not dispute that the individual Defendants are Davidson County employees. (ECF Nos. 23, 24, 26 at 2, ¶¶ 1-6.) She alleges, however, that soliciting employees to campaign for Defendant Day was outside Defendants' scope of employment. (ECF No. 26 at 10, ¶ 45; 21, ¶ 137.) Plaintiff asserts that political campaigning is not part of the job description for any job in the Davidson County Circuit Court's office, that employees who worked on Defendant Day's campaign were not compensated for their time, and that Tennessee law prohibits individuals from engaging in political activity while they are being paid by taxpayers, as well as from campaigning during work hours. (<u>Id.</u> at 9-10, ¶¶ 43-44; 21, ¶¶ 136-38.) Plaintiff alleges that Defendant Chatman repeatedly solicited her for campaign contributions from her own income and encouraged her to solicit donations from family members. (<u>Id.</u> at 7, ¶ 28; 9, ¶ 42; 21, ¶ 134-35.)

Plaintiff alleges that Defendants were prohibited from campaigning during work hours while being paid by taxpayers. <u>Cf.</u>

16

<u>Johnson</u>, 40 F.2d at 839 (finding that employer's actions were within the scope of employment, in part, because they occurred during regular working hours). Unlike cases where the Court has found that actions were within the scope of employment because they were part of "long-standing policy," Plaintiff alleges that Defendants' political actions directly contravened state policy. <u>Lindsey v. Allstate Ins. Co.</u>, 34 F.Supp.2d 636, 645 (W.D. Tenn. 1999). Plaintiff also alleges that Defendants' solicitation of funds targeted individuals —— namely, her family members —— outside of the County Circuit Court's office. <u>Johnson</u>, 40 F.2d at 839 (surmising that a defendant's actions might be outside the scope of employment when they implicate another entity). At this stage, based on these allegations, the Court can draw the reasonable inference that Defendants' acts were outside the scope of employment. <u>Ass'n Cleveland Fire Fighters</u>, 502 F.3d at 548; <u>Iqbal</u>, 556 U.S. at 678; <u>Marvaso v. Sanchez</u>, 971 F.3d 599, 607 (6th Cir. 2020) (where a plaintiff has pled that a defendant's acts were outside the scope of employment, whether those acts were, in fact, outside the scope "should be considered on a motion for summary judgment . . . rather than on a motion to dismiss").

Despite Defendants' arguments to the contrary, Plaintiff has not "effectively admitted" that Defendants were acting within the scope of employment by pleading that Defendants acted under color of state law. (ECF No. 31 at 7.) A defendant acts under color

17

state law when "performing an actual or apparent duty of his office" or where "the actor could not have behaved as he did without the authority of his office." Waters v. City of Morristown, TN, 242 F.3d 353, 359 (6th Cir. 2001) (internal citations, quotation marks omitted). "The key determinant is whether the actor intends to act in an official capacity," under the guise of "actual or ostensible state authority." Id. Accepting the allegations in the complaint as true, Defendants pressured Plaintiff and her colleagues to campaign on behalf of Defendant Day under the guise of "ostensible state authority" —— although, in fact, Defendants did not have the authority under Tennessee law to campaign during work hours, and thus acted outside the scope of employment. Id. Because Defendants "purport[ed]" to exercise their official authority at the time of the misconduct alleged, they acted under color of state law, even if their acts were outside the scope of employment. Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO vs. City of Memphis, 361 F.3d 898, 903 (6th Cir. 2004) (internal citations, quotation marks omitted).

Defendants' Motions to Dismiss are DENIED on Count Two.

**B. Defendants are Not Entitled to Qualified Immunity**

Although courts should decide whether a defendant is entitled to qualified immunity "at the earliest possible point" in litigation, "that point is usually summary judgment and not

18

dismissal under Rule 12." <u>Moderwell v. Cuyahoga Cnty., Ohio</u>, 997
F.3d 653, 659-60 (6th Cir. 2021). Before discovery, a court
typically "cannot fairly tell whether a case is obvious or squarely
governed by precedent." <u>Id.</u>

The Court has found that Plaintiff has stated a claim for
First Amendment retaliation, despite Defendants' arguments that
they cannot be liable because they lacked final decision making
authority to terminate Plaintiff. The Court noted the ambiguity
in Sixth Circuit caselaw about the circumstances under which a
defendant can be held liable even if the defendant was not the
sole or final decisionmaker. <u>Yerkes</u>, 2022 WL 17753528, at *5.

The Sixth Circuit has noted that ambiguity, opining that
"[t]here are many cases in the Sixth Circuit which state/hold that
[a defendant] may be held liable under § 1983 for a constitutional
violation even if he did not himself perform a particular action
necessary to this violation," but that other decisions "seem to
contradict the notion that individuals who are not final
decisionmakers can be held liable for the actions of the final
decisionmaker." <u>Yerkes</u>, 2022 WL 17753528 at *6 (collecting cases
supporting either conclusion). Additional discovery would aid the
Court in determining whether Plaintiff's case is factually closer
to cases allowing liability for defendants who are not the final
decisionmakers, or cases holding the other way. <u>Id.</u> Without the
benefit of discovery, the Court "cannot fairly tell whether [this

case] is obviously or squarely governed by precedent," and Defendants are not entitled to qualified immunity at this stage. Moderwell, 997 F.3d at 660.

Defendants' argument that they are entitled to immunity because they "could not fire Plaintiff as a matter of law" misstates the dispositive issue. (ECF No. 31 at 3.) The relevant question is not who among the Defendants was the ultimate decisionmaker, but who proximately caused Plaintiff's termination. In King, the Sixth Circuit addressed a prisoner's allegations that defendants reassigned him to a facility with a higher security level based on his First Amendment-protected speech. 680 F.3d at 688. The Sixth Circuit reversed the district court's dismissal of four of the defendants because the district court erred by conflating the question of causation with the question of who had the ultimate authority to approve the transfer. Id. at 695. The Sixth Circuit held that the district court erred in finding that the defendants "could not be liable for retaliation because they were not 'involved' in the decision to increase [plaintiff's] security level," reasoning that "[t]he district court's use of the word 'involved,' . . . erroneously focused solely on who made the ultimate decision to increase [plaintiff's] security, not whether any of the defendants' actions were the proximate cause of the increase in security." Id. Under King, Plaintiff is not barred as a matter of law from showing that Defendants caused her

20

termination although they did not have the statutory authority to fire her. (ECF No. 31 at 3.) Plaintiff need not show that Defendants were the final decisionmakers, but only that they proximately caused her termination —— a question that the Court cannot answer without discovery.

Defendants' reliance on Yerkes is likewise misplaced. Defendants cite Yerkes for the proposition that there is no clearly established legal principle that defendants who are not final decisionmakers can be liable for retaliating against a plaintiff. (ECF No. 31 at 13.) Defendants note that the Yerkes court granted qualified immunity to defendants because "confusion in the caselaw . . . makes it difficult to conclude that existing precedent . . . places the statutory or constitutional question beyond debate." Id. (quoting Yerkes, 2022 WL 177 53528, at *7) (internal quotation marks omitted). Yerkes, however, was decided at the summary judgment stage, and the Sixth Circuit held that qualified immunity was appropriate because there was no case "directly on point." Yerkes, 2022 WL 177 53528, at *2, 6. As explained above, before the completion of discovery, the Court does not have sufficient information to determine whether any cases are "directly on point." Id.; Moderwell, 997 F.3d at 660.

Defendants are not entitled to qualified immunity on their conspiracy claims. Defendants argue that, because Plaintiff's claim is barred by the intracorporate conspiracy doctrine, there

21

cannot be clearly established caselaw putting Defendants on notice that their conduct was unlawful. (ECF No. 31 at 13-14.) As explained above, Plaintiff has pled adequate facts to show that that Defendants' actions were outside the scope of employment. Without discovery, the Court lacks the information to determine whether Defendants' actions also violated clearly established law, because there is insufficient factual development to determine whether any cases are "directly on point." Moderwell, 997 F.3d at 660. Defendants are not entitled to qualified immunity at this time.

**V.  Conclusion**

Defendant Baletto's Motion to Dismiss is DENIED. Defendant Chatman's Motion to Dismiss is DENIED.

So ordered this  _26th_  day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

22